IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| U.S. APRONS, Inc., A Nebraska Corporation, | ) ) ) | |
| | ) | 7:08CV5003 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| R-FIVE, Inc., | ) ) | |
| Defendant. | ) ) | |

    The plaintiff's complaint alleges U.S. Aprons, Inc., ("U.S. Aprons"), purchased fabric from R-Five, Inc., ("R-Five"), to manufacture a total of 25,325 disaster vests for the American Red Cross. The plaintiff claims that after some of the vests were distributed, it received complaints of fabric discoloration. The fabric was allegedly tested and found to be defective, and due to this defect, 4,102 disaster vests were returned to the plaintiff. By the time the discoloration was discovered, the allegedly defective fabric had already been incorporated into the manufacturer of 6,303 more vests. U.S. Aprons alleges R-Five breached an express warranty, an implied warranty of fitness for a particular purpose, and an implied warranty of merchantability by selling defective fabric to the plaintiff. U.S. Aprons seeks damages. Filing No. 1.

    Currently pending is defendant's motion to stay pending arbitration, (filing no. 83), filed on November 6, 2009. Although the defendant's answer failed to raise arbitration as a defense, (filing no. 22); the defendant did not contest jurisdiction and/or venue in the Rule 26(f) Report, (filing no. 23, at p. 1); and none of the contract documents mention arbitration or contain language incorporating an arbitration clause by reference, the defendant claims this case must be arbitrated. In support of this claim, the defendant specifically cites the Worth Street Textile Market Rules as the industry standard, and claims these rules mandate arbitration of the parties' dispute. As explained below, defendant's motion to stay pending arbitration will be denied.

STATEMENT OF FACTS

The plaintiff's complaint was filed on May 1, 2008, (filing no. 1), more than eighteen months ago; the defendant's answer was filed on July 28, 2008, (filing no. 22); and the parties filed their Rule 26(f) Report on August 19, 2008. The order setting initial progression of this case was filed on August 22, 2008, (filing no. 24), and in accordance with that order, initial disclosures were exchanged on September 12, 2008. Filing Nos. 25 & 26.

The defendant immediately initiated written discovery, serving the plaintiff with Interrogatories (First Set) and Requests for Production of Documents (First Set) on September 18, 2008. Filing No. 28. The plaintiff answered defendant's interrogatories and responded to defendant's thirty-two document production requests on November 3, 2009. See, filing nos. 99-2 & 99-3.

The court entered an order on November 17, 2008, which scheduled a pretrial conference in North Platte on April 13, 2009. Filing No. 32. The defendant did not object to the progression order.

The plaintiff had served the defendant with written discovery on October 6, 2008. Filing No. 29. Having received no responses as of December 12, 2008, the plaintiff filed a motion to compel. Filing No. 34. The defendant served discovery responses on December 29, 2008, which included the following questions and answers:

> INTERROGATORY NO. 2: Please set forth each agreement between you and Plaintiff the following [sic]:
>
> (a) Effective Date;
> (b) Material Terms; and
> (c) Termination Date.

>ANSWER: The agreements between the parties are reflected in Purchase Orders 5220, 5227, 5228, 5313 and 5352 and corresponding Invoices.
>
>INTERROGATORY NO.7: With respect to any contention that you will propose or maintain at any hearing or trial regarding the above-referenced action supporting your allegations that Plaintiffs claims against Defendant are barred in whole or in part by the usage of trade including, but not limited to, the Worth Street Textile Market Rules, and Section 1-205 of the Uniform Commercial Code as enacted in Nebraska, state the following:
>
>>a. All material facts concerning such contention;
>>b. All opinions or contentions that relate to fact or the application of law to fact concerning such contention.
>
>ANSWER: Discovery has just commenced, and Defendant reserves the right to supplement its response to this Interrogatory prior to trial.

Filing No. 99-8, at CM/ECF pp. 5, 8. The defendant's answer to Interrogatory No. 2 did not identify arbitration as a material term of the parties' contract, and did not identify the Worth Street Textile Market Rules, ("Worth Street Rules"), as a document containing any of the contract terms. Purchase Orders 5220, 5227, 5228, 5313 and 5352, and their corresponding invoices, contain no arbitration clause, and no language incorporating an arbitration clause. Filing No. 85-6, (Levins affidavit), exs. C-E, at CM/ECF pp. 62-69. Specifically, the purchase orders sent by the plaintiff and the invoices used by the defendant did not incorporate the Worth Street Rules' "Standard Textile Salesnote by reference, expressly giving notice that [the contract] provides for arbitration of disputes." Filing No. 85-6, (Levins affidavit), ex. A, at at CM/ECF p. 8. In response to Interrogatory No. 7, the defendant did not raise the arbitration clause within the Worth Street Rules as a basis for claiming this federal proceeding is "barred in whole or in part by the usage of trade" provisions.

The defendant's interrogatory responses are consistent with plaintiff's interpretation of the contract, described in the affidavit of Dwayne Ahlberg, plaintiff's employee and representative, as follows:

> [A]t no point in time was any agreement to arbitrate stated on any of the Plaintiff's Purchase Orders sent to Defendant. To Affiant's knowledge, Plaintiff never received any documentation from Defendant that included a provision for arbitration.
>
> . . . Affiant did not agree individually or in any representative capacity on behalf of Plaintiff to arbitrate any dispute with Defendant, including the above-captioned litigation. Furthermore, Affiant is aware of no individual that has made any such representation(s) on behalf of Plaintiff to Defendant to arbitrate any dispute with Defendant.

99-10 (Ahlberg) ¶¶ 4-5, at CM/ECF p. 2.

The plaintiff served supplemental answers to the defendant's interrogatories on February 12, 2009. Filing No. 99-4. When defense counsel deposed Ahlberg and another U.S. Aprons employee, Dave Mowery, on February 16, 2009 in Ogallala, Nebraska, (filing no. 99-1, (Samuelson affidavit), ¶ 16), both witnesses were asked about their knowledge of textile industry standards. Defense counsel asked, "Are you familiar with the Worth Street Textile Market Rules?," (filing no. 85-4, ex 4 (Ahlberg deposition), at CM/ECF p. 70. Ahlberg testified he had never heard of them. Defense counsel apparently knew of the arbitration clause within the Worth Street Rules because during the deposition of Mowery, he asked, "Are you aware of any fabric industry standards or regulations that deal with the resolution of disputes?" Mowery responded, "No." Filing No. 85-5, ex. 5 (Mowery deposition), at CM/ECF p. 9. There is no evidence defense counsel specifically explained that the Worth Street Rules include an arbitration clause, or that he stated this case was subject to arbitration under those rules prior to filing the pending motion to stay for arbitration.

At the parties' request, the case was referred to mediation on March 3, 2009. Filing No. 52. The case was not settled by mediation, and a stay for arbitration was not requested. The court therefore entered an order confirming the jury trial remained scheduled to commence in North Platte on August 31, 2009. Filing No. 53. Pursuant to the parties' joint stipulation, (filing no. 60), the North Platte trial was continued to February 16, 2010. Filing No. 61.

The defendant served a records subpoena on Vartest Laboratories, Inc., located in New York City, on June 23, 2009. Filing No. 99-12. The subpoena commanded Vartest to produce the following by July 6, 2009:

> [A]ny and all draft reports, final reports, invoices, test results, test data, raw data, test protocols, communications, letters, e-mails, correspondence and other documents and things relating to any testing provided to U.S. Aprons, Sidney, Nebraska, in 2006 or 2007 including, *but not limited to*, anything relating to any of the following:
> Invoice No. 0064916-IN
> Invoice No. 0065215-IN
> Invoice No. 0064554-IN
> Quote No. 0913953
> File USAPRO.A080206A
> File USAPRO.A081706A

Filing No. 99-12, at CM/ECF p. 4 (emphasis in original).

The plaintiff disclosed expert witnesses on June 26, 2009, and on August 14, 2009, (filing nos. 65 & 69), and the defendant disclosed experts on July 27, 2009. Filing No. 66. Defense counsel deposed John Mintz from Hanover Uniform in Baltimore, Maryland on August 12, 2009, with plaintiff's counsel appearing by telephone. Filing No. 99-1, (Samuelson affidavit), ¶ 17. The plaintiff served additional written discovery on September 3, 2009, (filing no. 70), and the defendant served additional discovery on October 8, 2009. Filing Nos. 76, 77, & 99-5. Defense counsel deposed plaintiff's retained expert, Robert Rauner Jr., in Sidney, Nebraska

on October 20, 2009. Filing No. 99-1, (Samuelson affidavit), ¶ 18. Due to the volume of documents requested, plaintiff's counsel produced the documents responsive to defendant's October 8, 2009 discovery requests at the time of the Rauner deposition. Filing No. 99-6.

The pending motion to stay this case for arbitration was filed on November 6, 2009. Filing No. 83. The defendant claims this case must be arbitrated because "usage of trade" provisions are incorporated in contracts governed by the Uniform Commercial Code, and "[i]t is standard practice in the textile industry for disputes between merchants in the industry that cannot be worked out between the parties to be submitted to arbitration." Filing No., 85-6, (Levins affidavit), ¶ 5, at CM/ECF p. 2. Mr. Levins explains the Worth Street Rules, which are posted as "Industry Standards and Practices" on the National Textile Association web site at http://www.nationaltexti1e.org/, states disputes regarding textile sales must be resolved by arbitration. Filing No. 85-6, (Levins affidavit), ¶¶ 6-7, and exs. A-B, at CM/ECF pp. 2, 5, 58-59.

The Worth Street Rules, revision July 1, 1986, state:

(a) Any controversy or claim arising out of or relating to this contract, or the interpretation or breach thereof, including any modification or extension thereof, shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the General Arbitration Council of the Textile and Apparel Industries, a division of the American Arbitration Association or its successor.

85-6, (Levins affidavit), ex. A, at CM/ECF p. 8.

After the motion to stay for arbitration was filed, plaintiff's counsel deposed Levins and Robert Aucone, defendant's accounting expert, in Denver, Colorado on November 11, 2009, (filing no. 99-1, (Samuelson affidavit), ¶ 19), and he deposed

defense expert Dr. Christine Cole in Pendelton, South Carolina on November 19, 2009.

The defendant filed a motion for summary judgment on November 13, 2009. Filing No. 88. He thereafter deposed plaintiff's expert, Dr. David Hall, in Auburn, Alabama on November 20, 2009, (filing no. 99-1, (Samuelson affidavit), ¶ 20); served a fourth set of document production requests on November 19, 2009; and served a fifth set on November 20, 2009. Filing Nos. 99-7 & 99-11.

Over the eighteen-month course of this litigation, depositions were taken in Ogallala, Nebraska; Sidney, Nebraska; Denver, Colorado; Baltimore, Maryland; Pendleton, South Carolina; and Auburn, Alabama, with plaintiff's counsel physically present at each of these depositions except the deposition conducted in Baltimore, Maryland. Filing No. 99-1, (Samuelson affidavit), ¶ 22.

Defendant's motion for summary judgment was fully submitted on December 3, 2009, (see filing no. 74), and its motion to stay pending arbitration was fully submitted on December 4, 2009. Filing No. 109. The defendant filed a *Daubert* motion on December 7, 2009. Filing No. 109.

## LEGAL ANALYSIS

There are two primary issues in this case: 1) did the contract between the plaintiff and defendant include an agreement to arbitrate, and 2) did the defendant waive any right to arbitration by failing to timely raise?

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration of any dispute which [it] has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986). Unless the parties have agreed to submit the arbitrability question itself to

arbitration, (First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)), the court must first decide whether a valid agreement to arbitrate exists. If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649; Lipton-U.City, LLC v. Shurgard Storage Centers, Inc., 454 F.3d 934, 937 (8th Cir. 2006); Teamsters Local Union No. 688 v. Industrial Wire Products, Inc., 186 F.3d 878, 881 (8th Cir. 1999). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943 (1995). State contract law governs the question of whether parties have agreed to arbitrate. First Options, 514 U.S. at 944.[1]

The defendant argues that even without a written arbitration clause, or the incorporation of a document containing an arbitration clause, mandatory arbitration

---

[1]Choice of law was not discussed in the briefs of either party, and if the resolution of defendant's motion to stay ultimately rested on whether the parties agreed to arbitrate, choice of law may impact the result.

The defendant's briefs cite to the Nebraska court's interpretation of the Nebraska uniform commercial code. New York law is not discussed by either party. There is no choice of law provision in the purchase order and invoices at issue, or in the Standard Textile Salesnote included in the Worth Street Rules. However, the defendant is a New York corporation; the alleged defective dying of the fabric occurred in New York; the fabric was shipped from New York to Honduras for the manufacturing process at the plaintiff's request; and the Standard Textile Salenote states any arbitration must be held in New York City, and that the parties consent to the jurisdiction of the New York Supreme Court and the United States District Court for the Southern District of New York for all purposes relating to the contract.

"New York does not conform to typical UCC analysis, at least with respect to the burden of proof that arbitration is a material alteration when introduced as an additional term" in a sales contract. Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1285 (10th Cir. 1997)(quoting Marlene Industries Corp. v. Carnac Textiles, Inc., 45 N.Y.2d 327, 333 (1978)"[T]he inclusion of an arbitration agreement materially alters a contract for the sale of goods, and thus, pursuant to section 2-207 (subd [2], par [b]), it will not become a part of such a contract unless both parties explicitly agree to it.").

was included in the sales contract between the plaintiff and defendant because it is a "usage of trade" in the textile industry. The defendant claims it must be deemed a term of a the sales contract pursuant to Uniform Commercial Code sections 1-201(b)(3) , 1-303(c), and 2-202(a). The citations hereafter are quotes from the uniform code, not the code as adopted in either Nebraska or New York, both of which differ from each other and from the uniform code with respect to portions of the sections at issue.

> Pursuant to § 1-201(3):
>
> (3) "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act. . . .

U.C.C. § 1-201(3).[2]  U.C.C. 2-202 explains:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein . . . may be . . . supplemented (a) by . . . usage of trade (Section 1-303). . . .

U.C.C. § 2-202.[3]

---

[2] The Nebraska and New York versions of § 1-201(3) are not identical. New York's is identical to the uniform code.

[3] New York law incorporates its version of § 1-303, which is numbered § 1-205 in the New York U.C.C.

Pursuant to § 1-303(c),[4] "usage of trade" is defined as:

> [A]ny practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage must be proved as facts. If it is established that such a usage is embodied in a trade code or similar record, the interpretation of the record is a question of law.

U.C.C. § 1-303(c).

"[N]umerous cases have noted that arbitration of disputes is standard in the textile industry." In re Cotton Yarn Antitrust Litigation, 505 F.3d 274, 280 (4th Cir. 2007)(collecting cases). However, as specifically stated in the Worth Textile Rules, the Standard Textile Salenote "is effective with respect to any contract of subsequent date, which incorporates the Standard Textile Salesnote by reference, expressly giving notice that it provides for arbitration of disputes." Filing No. 85-6, (Levins affidavit), ex. A, at CM/ECF p. 8. In other words, and as fully supported by case law, the industry standard is to include written provisions like those in the Standard Textile Salesnote, including the arbitration clause, within the contract documents or at least incorporate them by specific reference. 21 Williston on Contracts § 57:152(4th ed.).[5] See also, In re Cotton Yarn Antitrust Litigation, 505 F.3d 274 (4th

---

[4]The New York U.C.C. further states "An applicable usage of trade in the place where any part of performance is to occur <u>shall</u> be used in interpreting the agreement as to that part of the performance." McKinney's Uniform Commercial Code § 1-205(5) (emphasis added). Under the uniform code and the Nebraska U.C.C., the usage of trade in the place of performance <u>may</u> be used to interpret the agreement. U.C.C. § 1-303(d);

[5]It is no longer the customary and usual practice to refer to the Worth Street Rules. Textile contracts now refer to the Commercial Arbitration Rules of the American Arbitration Association and its Supplementary Procedures for Arbitrations Involving the Textile and Apparel Industries. 21 Williston on Contracts § 57:152 (4th ed.).

Cir. 2007)(holding contracts incorporating "The Yarn Rules of 1989," and their arbitration provisions were binding on the buyer despite his lack of actual knowledge of the usage of trade); Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 296 (2d Cir. 1999) (holding a nearly illegible arbitration clause on the reverse side of a purchase confirmation was binding on an experienced textile merchant who had purchased goods from the seller, using the same paperwork, for nearly a decade); Stedor Enterprises, Ltd. v. Armtex, Inc., 947 F.2d 727, 729 (4th Cir. 1991) (holding the clause on the back of a sales form stating any dispute would be arbitrated by the American Arbitration Association or the General Arbitration Council of the Textile and Apparel Industries was binding even though it was never signed); Pervel Indus., Inc. v. T M Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir.1989) (holding a buyer is bound by the arbitration clause contained in purchase order confirmations particularly "in industries such as fabrics and textiles where the specialized nature of the product has led to the widespread use of arbitration clauses and knowledgeable arbitrators."); N &D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722 (8th Cir. 1976) (holding that where a fabric buyer signed an acknowledgment of buyer's offer which stated the acknowledgment was "subject to all the terms and conditions printed on the reverse side," and an arbitration clause was printed on reverse side, the buyer was bound by the arbitration clause); Level Export Corp. v. Wolz, Aiken & Co., 111 N.E.2d 218 (N.Y. 1953) (holding a contract incorporating the standard Cotton Textile Salesnote required arbitration despite buyer's ignorance of these provisions).

However, contrary to the apparent industry practice, the documents exchanged between U.S. Aprons and the defendant said nothing about arbitration. The defendant is arguing that even if a sales contract between textile merchants is wholly silent on the issue, an arbitration clause will be deemed part of the contract as an industry standard. The reasoning of some cases could support defendant's argument. In re Cotton Yarn Antitrust Litigation, 505 F.3d at 274 (4th Cir. 2007)(applying North Carolina UCC law) (holding arbitration is a usage of trade in the textile industry, and therefore the parties' oral contract included an agreement to arbitrate notwithstanding

the fact that arbitration was never mentioned, thus a confirmation document including an arbitration clause was not a material alteration under 2-207(b)). Other cases do not. See, e.g., Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279 (10th Cir. 1997)(applying New York UCC law) (holding two trade codes and an affidavit by the defendant textile merchant's employee were insufficient to show that the arbitration clause in an unsigned sales confirmation form did not materially alter, and therefore became part of, a textile merchant's sales contract with an apparel merchant).

Based on the foregoing, deciding whether the contract between U.S. Aprons and the defendant contained an arbitration clause presents a significant problem of apparent first impression, made even more difficult by the underlying and unresolved choice of law issues. Asking the parties to further brief the choice of law question will unnecessarily delay this case. The court need not decide whether an arbitration clause can be deemed part of the parties' contract because even if it is, and even if the court assumes the arbitration clause would cover the subject matter of this litigation, the defendant has waived its right to enforce arbitration.

A party may be found to have waived its right to arbitrate if it knew it had the right to arbitrate, acted inconsistent with that right, and as a result, prejudiced the other party by these inconsistent acts. Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007). "A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right," and a "party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." Lewallen, 487 F.3d at 1090 (internal citations and quotations marks omitted). "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" Lewallen, 487 F.3d at 1091 (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995). Even if a party has acted inconsistent with its right to arbitrate, it has not waived the right

unless its actions prejudiced the other party. A party is prejudiced when the "parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts." Lewallen, 487 F.3d at 1093.

In Lewallen, a creditor filed a claim in a bankruptcy proceeding to collect on an unpaid loan, and the loan documents at issue contained a written arbitration clause. The petitioner filed an objection to the creditor's claim. Over the eleven months thereafter, the creditor had several opportunities to invoke a right to arbitration, but instead, it served extensive discovery requests, filed substantive motions, attended several hearings, moved to extend its answer deadline, and participated in a joint motion to continue the trial date. Lewallen held that by engaging in litigation within the bankruptcy forum, the creditor acted inconsistent with its right to arbitrate. Since the petitioner had responded to the creditor's motions, and had begun the process of responding to discovery, the court concluded the petitioner would likely incur duplicative expenses if forced to arbitrate issues that were already presented to the courts. Lewallen held the creditor's delay had prejudiced the petitioner by delaying resolution of her case and by sending her "down the road of trial preparation at a time when she can ill afford to waste resources." Lewallen, 487 F.3d at 1094. The creditor had waived its right to arbitration.

Defendant R-Five cannot argue it was unaware of its claimed right to arbitrate. Indeed, it argues the right is so ingrained in the textile industry that even in the absence of a written arbitration clause, the right must be assumed to exist within textile sales contracts. Filing No., 85-6, (Levins affidavit), ¶ 5, at CM/ECF p. 2. The defendant has engaged in extensive discovery in this case, including serving Rule 26(a) disclosures, subpoenas, interrogatories, and voluminous requests for production; answering the plaintiff's discovery; retaining experts; and deposing fact and expert witnesses throughout the United States. The plaintiff has expended significant time and effort responding to, and participating in the parties' ongoing discovery and trial preparation processes. U.S. Aprons and R-Five participated in

court-approved mediation, and in several proceedings for entry of court progression orders or to extend progression deadlines. The defendant moved for summary judgment, the plaintiff prepared and filed its response, and the summary judgment motion is fully submitted. The case is scheduled for trial in two months.

The defendant knew of its claimed arbitration rights, but said nothing until eighteen months after the lawsuit was filed. It substantially invoked this court's litigation machinery over an eighteen-month period of time. Despite the defendant's assertions to the contrary, it is difficult to envision how the parties can avoid duplication of expenses if this case is now referred to an arbitration panel, and it is highly unlikely the case can be resolved by arbitration before February 16, 2010, the scheduled trial date. Granting the defendant's late invocation of a claimed right to arbitrate will prejudice the plaintiff in terms of both cost and delay. The defendant has waived its right to arbitration. See, Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20 (2d Cir. 1995) (holding a dye house waived its right to arbitrate where it could have invoked arbitration at the outset of litigation brought by a textile company but chose not to; allowed seven months to pass before removing the case to federal court; failed to raise arbitration as an affirmative defense in its initial and amended answers; engaged in a vigorous pursuit of discovery; and requested arbitration eight months after the suit was filed, when trial was imminent and referral to arbitration would delay resolving the case).

Accordingly,

IT IS ORDERED that the defendant's motion to stay pending arbitration, (filing no. 83), is denied.

DATED this 14th day of December, 2009.

BY THE COURT:
*Richard G. Kopf*
United States District Judge